ROBERT McC. BUTT AND OTHERS *v.* WILLIAM AND THOMAS HOGE.

No precise form of words, nor is any particular manner, necessary to be used in giving the drawers of a bill of exchange notice of its dishonor, so as to render them liable thereon.  If the bill is described in the notice with such distinctness and certainty as will enable the party to ascertain from it the particular bill to which it refers, and, in addition, imports that it has been dishonored, it is sufficient.

Notice of protest need not inform the party notified that he is looked to for payment. That may be inferred from the nature of the notice.

Nor need it be in writing.  Verbal notice is sufficient.

A bill of exchange drawn on London, was protested there for non-payment, and returned by the first mail steamer to the payees in New York.  On its arrival, one of the payees took it to the place of business of the drawers, who were partners, saw one of them, laid the bill and protest on his desk before him, and informed him of its dishonor.  *Held*, sufficient notice to render the drawers liable thereon.

When a bill of exchange is expressed in the currency of a foreign country, the amount due on it must be ascertained and determined by the rate of exchange or the value of such foreign currency at the time of demand of payment.

But in an action on a bill expressed in English currency, no proof of value need be given.  The value of a pound sterling is fixed by Act of Congress at $4.84, and, in the absence of other evidence, that Act is conclusive upon the question of value, and the court is bound to take judicial notice of it.

APPEAL by defendants from a judgment upon a trial before

the court without a jury.    The facts are fully stated in the opinion of the court.

*Cummins, Alexander,* and *Green,* for the appellants.

*C. Bainbridge Smith,* for the respondents.

By the Court, HILTON, J.—This action is upon a bill of exchange for £2000 sterling drawn by the defendants, to the order of the plaintiffs, upon a firm in London, accepted, and subsequently protested for non-payment.    On the trial before Judge BRADY, without a jury, it appeared that the bill became due, and was protested at London, on November 26th, 1857.    It reached the plaintiffs here, by the first subsequent mail steamer which arrived, on December 14th, when the plaintiffs immediately went with it to the defendants at their place of business, saw William Hoge, and, laying the bill and protest on his desk before him, informed ·him of the dishonor.    Upon this proof the plaintiffs rested, when the defendants moved to dismiss the complaint upon two grounds: 1*st.* That the notice of protest was insufficient; 2*d.* That plaintiffs had not proved the amount due on the bill.    The judge denied the motion, and gave judgment for the plaintiffs, computing the amount due according to the valuation put upon the pound sterling by the Act of Congress on that subject passed July 27th, 1852, and which declares that in all payments by or to the treasury of the United States, it shall be deemed equal to $4.84; and the same rule is applied in appraising merchandise where the value is by the invoice in pounds sterling.    Dunlap's U. S. Stats. at Large, 997.

The defendants ask to have this judgment reversed, and we are called upon to examine the questions presented at the trial.

1*st.* No precise form of words, and no particular manner, was necessary to be used in giving the defendants notice of dishonor; nor was it required to be in writing.    Verbal notice was sufficient.    1 Chitty, jr., on Bills, 70; Story on Bills, §§ 382, 390; *Cuyler* v. *Stevens,* 4 Wend. 566.

In all cases it is enough if the bill is described in the notice with such distinctness and certainty as will enable the party notified to ascertain from it the particular bill to which it refers, and, in addition, imports that the bill has been dishonored. Bayley on Bills, 253 ; 1 Chitty, jr., on Bills, 70 ; *Shed* v. *Brett*, 1 Pick. 401 ; *Smith* v. *Whiting*, 12 Mass. 6 ; *Mills* v. *Bank of U. S*, 11 Wheat. 431 ; *Woodin* v. *Foster*, 16 Barb. 146 ; *Cayuga Co. Bank* v. *Worden*, 2 Selden, 19. And it may now be considered settled, upon the authority of well adjudged cases, that where the notice is given by the holder or by his order, it need not inform the party notified that he is looked to for payment, because such may very reasonably be inferred from the nature of the notice, or otherwise it would not have been given. *Bank of U. S.* v. *Carneal*, 2 Peters, 543, 553 ; 3 Kent's Com. 108 ; *Ransom* v. *Mack*, 2 Hill, 587 ; *Margesson* v. *Goble*, 2 Chitty's Rep. 364.

The notice was clearly sufficient. With the bill on the desk before him, the defendant could not well be misled as to the particular draft which had been dishonored ; nor could he mistake the object of the plaintiff's calling with it, attached as it was to the notary's certificate of protest for non-payment, which, by statute (2 R. S. 284, § 55,) is declared to be presumptive evidence of the facts contained in it.

2*d*. The bill being expressed in money of a foreign country, the amount due on it was to be ascertained and determined by the rate of exchange or the value of such foreign currency at the time of such demand of payment. 1 R. S. 771, § 21. If, therefore, a single witness had testified on the trial that on the day the bill became due he purchased, at a banking house in this city, exchange on London, and paid for it at the rate of $4.84 for a pound sterling ; and that that, he believed, was the market rate on that day, there probably would exist no doubt, in the mind of the counsel for the defendants, that such testimony, standing alone and uncontradicted, would be controlling evidence as to the value. And yet, the evidence furnished by the Act of July 27th, 1852, was of a much higher character, and would far outweigh any evidence upon the subject of the value of a pound

sterling in this country, which could be furnished by the testimony of a witness. It is not evidence founded upon the arbitrary views of any particular man or class of men, but it shows a value fixed by the Federal Government in all its dealings with the public, and the current rate or value at which a pound sterling was and is received by its numerous officers, not only in this city and state, but throughout the country.

The act being a public one, the court was bound to have knowledge of it, and, in the absence of other evidence, it was conclusive upon the question of value.

I see no error in the ruling of the judge at the trial, or in the judgment rendered, and it must therefore be affirmed.

Judgment affirmed.